## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

DAMARIS SANTOS ARRIETA and
GUSTAVO QUERALES SALCEDO,
in representation of their minor son GQS,

    Plaintiff,

v.

HOSPITAL DEL MAESTRO, et al.,

    Defendants

CIVIL NO. 15-3114 (MEL)

## OPINION AND ORDER

Pending before the court are two motions in limine filed by Dr. Félix Villar and Hospital Del Maestro, Inc. (collectively "Defendants"). ECF Nos. 57; 59. Defendants' first motion requests this court to enter an order precluding Dr. Carolyn Crawford ("Dr. Crawford") from testifying about autism spectrum disorder. ECF No. 57. Defendants' second motion requests the court to enter an order precluding testimony in regards to causation for autism spectrum disorder. ECF No. 59. Damaris Santos Arrieta and Gustavo Querales Salcedo, in representation of their minor son GQS ("Plaintiff"), filed a response in opposition, and Defendants' filed a reply. ECF Nos. 71; 74. A Daubert hearing was held on June 19, 2018. ECF No. 99.

### I. COMPLIANCE WITH DISCOVERY RULES

Dr. Crawford issued her export report on September 10, 2015, and Plaintiff has at no point requested to amend it. ECF Nos. 57, at 3; 57-3. This report does not contain any information in regards to autism or autistic like behavior. ECF No. 57-3. In fact, Dr. Crawford stated at the June 19, 2018 hearing that she could not mention that Plaintiff suffered from autistic behavior in her written expert report because she did not have that data. Hr'g, June 19, 2018, at 11:25 AM.

Nonetheless, Plaintiff states that Dr. Crawford testified in regards to autism during her deposition. ECF No. 71, at 5–9.

Neither Defendants nor Plaintiff have showed a great degree of diligence in this matter. Plaintiff's counsel claims that there was no duty to amend Dr. Crawford's expert report despite the fact that Dr. Crawford's report does not mention autism and that Dr. Crawford considered additional medical records that were produced after her expert report was submitted. On the other hand, Defendants' should not have waited until months after the discovery deadline to bring this issue to the court's attention. The discovery deadline was extended until March 27, 2017, but these motions in limine were not brought until five months later. ECF Nos. 39; 41; 57; 59.

According to the Federal Rules of Civil Procedure 26(a)(2)(B) an expert witness is required to provide a written report that contains: "**(i)** a complete statement of all opinions the witness will express and the basis and reasons for them; **(ii)** the facts or data considered by the witness in forming them; **(iii)** any exhibits that will be used to summarize or support them . . . ." Fed. R. Civ. P. 26(a)(2)(B). Under Rule 37(c)(1) "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Thus, "Rule 37(c)(1) is traditionally invoked to preclude expert testimony at trial." Poulis-Minott v. Smith, 388 F.3d 354, 358 (1st Cir. 2004) (citations omitted); Genereux v. Raytheon Co., 754 F.3d 51, 59 (1st Cir. 2014) ("When a party flouts" deadlines for the identification of experts and the disclosure of their opinions, "one customary remedy is preclusion." (citing Macaulay v. Anas, 321 F.3d 45, 50 (1st Cir.2003); Thibeault v. Square D Co., 960 F.2d 239, 246–48 (1st Cir.1992); Fed. R. Civ. P. 37(c)(1))).

"Generally . . . 'Rule 26(a)(2) does not allow parties to cure deficient expert reports by

supplementing them with later deposition testimony,' or the function of expert reports would be 'completely undermined.'" MMG Ins. Co. v. Samsung Electronics Am., Inc., 293 F.R.D. 58, 61 (D.N.H. 2013) (finding supplemental deposition testimony insufficient to cure expert report's failure to disclose one of the bases of expert's opinion as to cause of a fire (quoting Ciomber v. Coop. Plus, Inc., 527 F.3d 635, 642 (7th Cir. 2008))); see also Poulis–Minott, 388 F.3d at 358 ("The purpose of the expert disclosure rules is to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent." (citations and internal quotation marks omitted)). Thus, based on the expert disclosure rule, courts routinely confine expert witnesses to testifying about the opinions that are contained within their original expert report or a timely-filed amendment or supplement. See, e.g., Carbo v. Chet Morrison Servs., LLC, No. CIV.A. 12–3007, 2013 WL 5774948, at *6 (E.D. La. Oct. 24, 2013) ("[T]hough Carbo has not indicated that he intends to supplement or amend Pazos' report, the Court notes, out of an abundance of caution, that such amendments are not permitted at this late stage of litigation. Therefore, Carbo is confined to his current expert report . . . ."); Bartlett v. Mutual Pharmaceutical Co., Inc., 731 F.Supp.2d 184, 188 (D.N.H. 2010) (granting judgment as a matter of law in part because the expert's "opinion was expressed for the first time at his deposition, not in his expert report, and thus was not properly disclosed under Fed. R. Civ. P. 26(a)(2)(B)(i)"); Galaxy Ventures, LLC v. Rosenblum, No. CIV 03–1236 JH/LFG, 2005 WL 5988690, at *7 (D.N.M. July 21, 2005) ("Dr. McDonald's testimony at trial will be confined to the information and opinions expressed in his original expert report, dated July 21, 2004."); Medtronic Inc. v. Guidant Corp., No. CIV. 03–848–SLR, 2004 WL 5501181, at *1 (D. Del. Oct. 6, 2004) (granting *motion in limine* to confine expert witness testimony to opinions expressed in expert report).

Here, Plaintiff cannot cure Dr. Crawford's deficient expert report by relying on her

deposition testimony. If this were allowed, it would ignore the fact that the Defendants' were not prepared for Dr. Crawford to testify about autism at her deposition. Moreover, at least one of the Defendants' experts in this case, Dr. Robert Castro a neonatologist and perinatologist, submitted his expert report on the date of Dr. Crawford's deposition. Hr'g, at 10:05–06 AM. Thus, this defense expert did not have the benefit of knowing that Dr. Crawford would be providing an opinion on autism or autistic like behavior when writing his report. For the same reasons, Plaintiff cannot claim that allowing Dr. Crawford to testify about her opinion in regards to autism would be harmless.

Additionally, Plaintiff cannot make the claim that this deficiency in Dr. Crawford's expert report was substantially justified. Not only has Plaintiff not requested leave to amend or supplement Dr. Crawford's September 10, 2015 expert report, but also Dr. Crawford acknowledged at the hearing that Plaintiff's counsel told her not to amend it: "No. I did not prepare an amendment. I asked if I should and I was told no. That the questions would come out at the deposition." Hr'g, at 2:04–2:05 PM. Plaintiff's counsel is incorrect in stating that it was not necessary to amend Dr. Crawford's expert report as the Federal Rules of Civil Procedure make it clear that an expert report must contain a "complete statement of all opinions the witness will express." Thus, Dr. Crawford's expert report should have been amended in order to discuss any claim of autism or autistic like behavior, which are not included in her original and current report. Moreover, the expert report should have been amended to include the additional documents that Dr. Crawford reviewed after she wrote her expert report.

Since Dr. Crawford's expert report is devoid of information in regards to autism, autism spectrum disorder, or autistic like behavior, she is precluded from testifying in regards to her opinion about Plaintiff's autism, autism spectrum disorder, or autism like behavior at trial. Plaintiff

4

will not be deeply prejudiced by this decision, as at the hearing Dr. Crawford noted how Plaintiff does not only have a history of autistic like behaviors but

> he also has ADHD. He also has motor impairment. He also has a history of convulsions. He has developmental delay. He has many different aspects of brain injury and brain dysfunction, not just autistic behavior . . . . He has persistent motor disabilities . . . which are not related to autism. He has, on examination, a persistent tonic neck reflex, which is usually an indication of brain injury and it has inhibited his motor development. He is now receiving physical therapy b/c of motor problems and gait problems and ataxia. He has shown evidence of hypotonia, low muscle tone, which is not, this is not pure autism.

Hr'g, at 11:23–11:25 AM.

## II. DAUBERT ISSUE

Defendants' also challenge Dr. Crawford's qualifications and reliability to render an expert opinion in regards to Plaintiff's alleged autism under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). ECF Nos. 57; 59.

In Daubert, the Supreme Court "vested in trial judges a gatekeeper function, requiring that they assess proffered expert scientific testimony for reliability before admitting it." Milward v. Acuity Specialty Prod. Grp., Inc., 639 F.3d 11, 14 (1st Cir. 2011). Moreover, the Supreme Court later "clarified that courts have this function with respect to all expert testimony, not just scientific." Id. at 14 n.1 (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)). Rule 702 of the Federal Rules of Evidence was amended in response to Daubert, and to the many cases that applied Daubert. Fed. R. Evid. 702 advisory committee's note to 2000 amendments. Under Rule 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; **(b)** the testimony is based on sufficient facts or data; **(c)** the testimony is the product of reliable principles and methods; and **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; Samaan v. St. Joseph Hosp., 670 F.3d 21, 31 (1st Cir. 2012). The admissibility

of all expert testimony is governed by Rule 104(a) of the Federal Rules of Evidence, which means "the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702 advisory committee's note to 2000 amendments (citing Bourjaily v. United States, 483 U.S. 171 (1987)); Daubert, 509 U.S. 579, 592 n.10 (1993) (quoting Rule 104(a) and stating that "[t]hese matters should be established by a preponderance of proof." (citing Bourjaily, 483 U.S. at 175–176)).

Plaintiff has not brought forth any precedent where experts have been allowed to testify as to the causes of autism or autistic like behavior.[1] Plaintiff's counsel was first asked at the Daubert hearing if they could cite to one case where an expert testified at trial about what caused someone to suffer from autism. Hr'g, at 3:06 PM. Plaintiff's counsel stated that they could not provide a case and that Dr. Crawford never said that "it" caused the patient autism, but rather autistic like behavior. Hr'g, at 3:06 PM. Nonetheless, when asked the same question in regards to autistic like behavior, Plaintiff's counsel stated: "Not at this moment. Not at this time. I'm sure we can find one." Hr'g, at 3:07 PM. Plaintiff's counsel then stated that Dr. Crawford's diagnoses is "brain damage. It's not autism, it's brain damage that has caused, as it often does, autistic like behavior. Her diagnosis was never that this was autism." Hr'g, at 3:07 PM. Regardless, Plaintiff has not cited to any case law to support their argument. On the other hand, there is case law that suggests the contrary. See Hendrix ex rel. G.P. v. Evenflo Co., 609 F.3d 1183, 1203 (11th Cir. 2010) (affirming the district court's decision "that [Plaintiff] failed to present scientifically reliable evidence that traumatic brain injury can ever cause autism [and] exclud[ing] the experts' theories because of a lack of reliable proof of general causation between the alleged injury and the purported cause of that injury." However, emphasizing "that we express no opinion regarding whether

---

[1] This, of course, could change as science progresses in its knowledge of autism.

6

traumatic brain injury sustained in the perinatal or neonatal period can ever cause or contribute to later development of an autism spectrum disorder."); Melnick v. Consol. Edison, Inc., 959 N.Y.S.2d 609, 623 (N.Y. Sup. Ct. 2013) (after holding a Frye hearing, precluding expert testimony that Plaintiff's autism was caused by her premature birth and low birth weight, in a case involving the slip and fall of a pregnant mother, as "[t]o allow the plaintiffs' expert to testify that Jenny Fay Kusner's diagnosis of autism/PDD was caused by her preterm delivery at 34.2 weeks with a birth weight of 5 lbs. 4 oz. is not based on generally accepted science and would be pure speculation. . . . It is not the role of a jury of laypersons to find additional causes of autism/PDD where the medical researchers have not found such causes."). Moreover, Dr. Crawford confirmed at the Daubert hearing that she has never before testified as an expert in a trial to the effect that it is more likely than not that somebody is suffering from autistic like behavior because of some occurrence during the neonatal period. Hr'g, at 12:12 PM.

Defendants argue that Dr. Crawford should not be allowed to testify about autism as she is not qualified in this area. ECF No. 57, at 5. Plaintiff's counsel stated that at trial, Dr. Crawford will be tendered as an expert in the fields of neonatology, pediatric neonatology, and within neonatology Dr. Crawford would be questioned about autism. Hr'g, at 11:04–11:05 AM. Dr. Crawford testified that she was board certified in Pediatrics in 1976 and neonatal-perinatal medicine in 1977. Hr'g, at 10:34 AM.[2] She has taken care of thousands of premature sick newborns in her career, developed statewide educational programs to deal with perinatal emergencies, she has published chapters in books and articles, and she continues to practice and to teach. Hr'g, at 10:34–10:35 AM. Dr. Crawford confirmed that "pediatric neonatology" does exist and it is when there is a follow up of high-risk infants for developmental disabilities. Hr'g, at 11:06 AM.

---

[2] Per Dr. Crawford's testimony, perinatal is around the time of birth, and neonatal is a newborn and shortly thereafter. Hr'g, at 11:10 AM.

7

Dr. Crawford testified that, as part of medical legal reviews, she has evaluated situations where autistic like behavior has been a manifestation of brain damage.  Hr'g, at 2:09–2:10 PM.  However, when asked how many children she had diagnosed with autistic like behavior as part of her private practice as a neonatologist/perinatologist, she stated that "You can't diagnose it until they are older.  You can't diagnose it in the newborn period.  You can say they are at risk for it, they should be followed closely, there should be early intervention if any abnormal findings are identified, but you can't diagnose autism in the newborn nursery."  Hr'g, at 2:10 PM.  Thus, while Dr. Crawford's expertise and experience is in regards to newborns, autism—by her own admission—cannot be diagnosed in a newborn.  Moreover, Dr. Crawford has not made any publications in regards to autism or autistic like behavior.  Hr'g, at 2:07–2:08 PM.  Thus, Plaintiff has not proved by a preponderance of evidence that Dr. Crawford is qualified to testify in regards to autism in the context of the matters at issue in the case at bar.

Defendants also assert that Dr. Crawford did "not show that she reliably applied any objective principles and methods to the facts of this case with regards to the analysis leading to the autism spectrum disorder."  ECF No. 57, at 7.  When asked how she would explain to a jury the difference between someone who suffers from autism and someone who suffers from autistic like behavior, Dr. Crawford stated that "someone who suffers from autism is more likely to have had a normal neonatal period, normal delivery."  Hr'g, at 11:50 AM.  However, Dr. Crawford was not able to provide any supporting medical literature when asked to support this assertion that if you suffer from autism then more likely than not you had a normal neonatal delivery but if you suffer from autistic like behaviors then it is more likely than not that you suffered from an abnormal neonatal delivery.  Hr'g, at 11:51–11:52 AM.  Although Dr. Crawford provided the court with two different abstracts at the hearing, neither of these supported the proposition stated by Dr. Crawford.

Additionally, when asked if there is any such thing in the medical literature as a diagnosis of autistic like behavior, Dr. Crawford responded that "they will be labeled as autistic." Hr'g, at 11:56–11:57 AM.

Dr. Crawford testified at the Daubert hearing that both an individual with autism and an individual with autistic like behavior would have problems with socialization, interpersonal interactions, and communication. Hr'g, at 2:25–2:26 PM. She also testified that there were certain difficulties or symptoms that an individual with autism would not have but someone with autistic like behavior may have, including: ADHD, A-symmetric tonic neck reflex, hypotonia, motor abnormalities, abnormal posture, and instability in standing and walking. Hr'g, at 2:26–2:29 PM. When asked if she could provide any literature from medical journals that describes these symptoms about autistic like behavior, Dr. Crawford testified that "I don't know. I don't think I can answer that question. There are children that have congenital autism, and there are children who have acquired autism, which I'm referring to as autistic like behavior because they have other evidence of brain damage." Hr'g, at 2:31 PM.

The Daubert Court laid out various non-exclusive factors to assist a trial court in determining the admissibility of an expert's testimony. Milward, 639 F.3d at 14 (citing United States v. Mooney, 315 F.3d 54, 62 (1st Cir.2002)); Fed. R. Evid. 702 advisory committee's note to 2000 amendments. "Given that 'there are many different kinds of experts, and many different kinds of expertise,' these factors 'may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" Milward, 639 F.3d at 14 (citing Kumho Tire, 526 U.S. at 150). Here, two of the factors are particularly useful in deciding admissibility: (1) whether the theory has been subject to peer review and publication, and (2) the theory's level of acceptance within the scientific community. See id. (citing Mooney,

315 F.3d at 62); Samaan, 670 F.3d at 32 (citing Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998)); Fed. R. Evid. 702 advisory committee's note to 2000 amendments.

In regards to peer review and publication, Dr. Crawford was not able to provide any medical literature that establishes what are the causes of autistic like behavior. Thus, Plaintiff has not established by a preponderance of evidence that Dr. Crawford's testimony is the product of reliable principles and methods. Accordingly, Dr. Crawford shall be precluded from testifying at trial about autism, autism spectrum disorder, or autistic like behaviors. Moreover, any opinion stating that the alleged acts of the Defendants caused autism, autism spectrum disorder, or autistic like behaviors, shall be precluded.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion in limine to exclude all testimony at trial by Dr. Carolyn Crawford as an expert in the particular area of autism spectrum disorders (ECF No. 57) is GRANTED in that Dr. Crawford will not be permitted to testify in regards to autism, autism spectrum disorder, or autistic like behaviors. Defendants' motion in limine to preclude causation opinions regarding autism spectrum disorder (ECF No. 59) is GRANTED and thus, opinions regarding Defendants' alleged acts as the cause of autism, autism spectrum disorder, or autistic like behaviors are precluded.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 13th day of July, 2018.

s/Marcos E. López<br>U.S. Magistrate Judge